# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

AMERISTAR JET CHARTER, INC.,

    *Plaintiff,*

v.

JUAN CARLOS VALENCIA and
MELBOURNE AIRPORT
AUTHORITY,

    *Defendant.*

Case No. 6:24-CV-549

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff Ameristar Jet Charter, Inc., ("Ameristar" or "Plaintiff") and files this, its Original Complaint (the "Complaint"), against Juan Carlos Valencia ("Valencia") and Melbourne Airport Authority ("MAA"). In support of this Complaint, Ameristar respectfully shows the Court as follows:

### I.  PARTIES

1. Plaintiff Ameristar Air Jet Charter, Inc. is a Texas corporation with its principal place of business at 4400 Glenn Curtis Drive, Addison, Texas 75001.

2. Defendant Juan Carlos Valencia is a Florida resident who resides and may be served at 2127 Brickell Avenue, Unit 2304, Miami, Florida, 33129 or wherever he may be found.

3. Defendant Melbourne Airport Authority is a public and governmental body existing under and by the laws of the State of Florida and may be served with process by serving its Executive Director, Greg Donovan, A.A.E. at One Terminal Parkway, Suite 220 Melbourne, Florida 32901-1888.

## II.    JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different States.

5. The Court has personal jurisdiction over MAA and Valencia because they are citizens of Florida, and because the personal property forming the basis of Plaintiff's claims is located in Brevard County, Florida.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because MAA resides in this judicial district, and because the personal property forming the basis of Plaintiff's claims is in Brevard County, Florida.  The Middle District of Florida is the United States District embracing Brevard County, Florida. *See* 28 U.S.C. § 89(b).

### III. BACKGROUND

7. Ameristar is in the business of providing on-demand air charters for passengers and cargo, and, in furtherance of that business, operates a number of aircraft.

8. Valencia is the Vice President of Intrade, Ltd. ("Intrade").

9. On December 27, 2023, Ameristar and Intrade entered into that certain written Engine Purchase Agreement, dated December 27, 2023, under which Intrade agreed to sell, and Ameristar agreed to purchase from Intrade, three PRATT AND WHITNEY model JT8D-9A aircraft engines (the "Purchase Agreement") having serial numbers 666691, 674536, and 653574. The Purchase Agreement expressly provided that each engine was to be treated as a separate transaction. The Purchase Agreement also provided that a condition to closing was that each engine complete a successful MPA (maximum power assurance) run.

10. The engine having serial number 653574 failed its MPA. As a result, Ameristar did not purchase that engine. However, Ameristar proceeded with the purchase from Intrade of the engines having serial numbers 666691 ($223,333.00) and 674536 ($223,334.00) (the "Engines").

11. On or about December 29, 2023, Ameristar paid for the Engines (a total purchase price of $446,667.00) and an additional $1,400 in closing costs. However, after accepting payment, Intrade failed to deliver the Engines to Ameristar or make

the aircraft available to Ameristar so that it could remove the Engines.

12. The aircraft to which the Engines were attached is located at MAA. Ameristar sought permission from MAA to remove the Engines from the aircraft. In February 2023, MAA notified Ameristar that MAA allegedly had recorded a lien against the aircraft on which the engines were located and prohibited Ameristar from taking possession of the Engines. MAA's alleged lien is based on storage and maintenance expenses that allegedly accrued since 2022.

13. There was no recorded lien on the aircraft or Engines on the date of sale to Ameristar. Prior to the purchase, Ameristar had no notice of any lien or claim by MAA to the aircraft or Engines. Ameristar is a bona fide purchaser for value of the Engines.

14. Ameristar made demand on MAA to release the Engines to Ameristar. Despite acknowledging that MAA did not have a recorded lien against the aircraft or Engines on the date Ameristar purchased the Engines, MAA refused to let Ameristar take possession of the Engines.

15. In short, MAA is refusing to let Ameristar take possession of Engines which rightfully belong to it. If MAA has a valid lien against the Engines, Valencia defrauded Ameristar. As a result, Ameristar brings this claim to obtain possession of the Engines which rightfully belong to it and to recover the damages it has

suffered by being deprived of the use of the Engines. Alternatively, Ameristar seeks damages from Valencia for fraud.

## IV. CLAIMS FOR RELIEF

### A. Count 1 – Conversion (MAA)

16. Plaintiff repeats and incorporates by reference the paragraphs above, as applicable, as if fully restated herein.

17. Ameristar completed its purchase of the Engines before MAA recorded any notice of lien against the aircraft or Engines.

18. Ameristar did not have actual or constructive notice of MAA's claims before purchasing the Engines.

19. Ameristar is a bona fide purchaser for value of the Engines and the Engines are not subject to MAA's lien.

20. MAA has no legal basis for prohibiting Ameristar from taking possession of the Engines.

21. MAA is exercising wrongful dominion and control over Ameristar's property, specifically, the Engines.

22. Ameristar seeks a temporary restraining order and temporary and permanent injunctions to enjoin MAA from interfering with Ameristar's right to possess the Engines. In addition, Ameristar seeks damages for loss of use of the

Engines and the lost profit which Ameristar would have realized from the use of the Engines.

**B.     Count 2 – Declaratory Judgment (MAA)**

23.    Plaintiff repeats and incorporates by reference the paragraphs above, as applicable, as if fully restated herein.

24.    Pursuant to 28 U.S.C. §§ 2201, Ameristar seeks a declaration from the Court that MAA's alleged lien on the Aircraft does not attach to, and is null and void as to, the Engines.

25.    A real and justiciable controversy exists as to the rights and status of the parties herein regarding the right of possession to the Engines and the validity, scope, and effect of MAA's lien on the Aircraft at issue.

26.    The controversy between Ameristar and MAA will be resolved by the declaration sought.

**C.     Count 3 –Application for Injunctive Relief (MAA)**

27.    Plaintiff repeats and incorporates by reference the paragraphs above, as applicable, as if fully restated herein.

28.    The Engines are unique and are required to be maintained in accordance with FAA rules and regulations.  Ameristar is in possession of the Engine records. The Engines are worthless without the records. Likewise, the records are worthless without the Engines.  Neither MAA, nor any other person, can legally use the

Engines to fly an aircraft in the Unites States without the records in Ameristar's possession.

29. In addition, the Engines are nearly fifty years old and are in excellent condition for their age. It would be extremely difficult, if not impossible to find engines of the same vintage in the same or substantially similar condition.

30. MAA's failure to allow Ameristar to take possession of the Engines has caused, and will continue to cause, Ameristar to suffer irreparable harm. As a result, Ameristar seeks an immediate Temporary Restraining Order ("TRO") from the Court and a Temporary and Permanent Injunctions enjoining MMA from interfering with Ameristar's access to the aircraft to take possession of the Engines.

31. Ameristar is likely to prevail on the merits of its claims. MAA did not record its lien on the aircraft until after Ameristar completed its purchase of the Engines. MAA has acknowledged that its lien did not attach until it was recorded. Accordingly, Ameristar is a bona fide purchaser and is entitled to recover its personal property.

32. Ameristar is prepared to post a bond in an amount the Court deems proper. Given the nature of Ameristar's claim and the likelihood of Ameristar's success on the merits, Ameristar believes a cash bond in the amount of $1,000 is sufficient to protect MAA's interest in the event it is determined that MAA was wrongly enjoined.

33. Granting the TRO and Temporary Injunction will not negatively affect the public interest. It is in the public interest to restrain a governmental entity such as the MAA from interfering with an individual's right to access his or her personal property when the governmental entity has no legal basis for so restraining the individual.

**B.   Count 4 - Fraud (Valencia)**

34. Plaintiff repeats and incorporates by reference the paragraphs above, as applicable, as if fully restated herein.

35. If MAA has a valid lien against the Engines, Valencia knowingly made untrue statement of fact when he represented that Intrade would deliver good and marketable title to the Engines free and clear of any liens at closing and that Intrade had paid all charges, invoices, statements, taxes, duties, and penalties with respect to the Engines. Valencia made the representations for the purpose of inducing Ameristar to enter into the Purchase Agreement, and Ameristar relied on the representations when entering into the Purchase Agreement and paying the purchase price.

36. Absent Valencia's misrepresentations, Ameristar would not have entered into the Purchase Agreement.

37. Ameristar's reliance on Valencia's representations was justifiable.

38. As is set forth herein, Ameristar suffered damages as a result of Valencia's fraud.

39. In addition, upon information and belief, Valencia used Intrade as a sham to perpetrate his fraud. Intrade is a British Virgin Island's company with no office in the United States, no material assets, and no agent for service of process

40. ***Punitive Damages.*** Valencia's fraud was the result of intentional misconduct or gross negligence. As a result, Ameristar is entitled to recover punitive damages in an amount to be determined by the trier of fact.

41. ***Attorneys' Fees***. Under the Wrongful Act doctrine, Ameristar is entitled to recover any attorneys' fees it incurs in pursuing claims against MAA and Valencia.

## V.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests:

(a) The Court issue a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction enjoining MMA from interfering with Ameristar's access to the aircraft for purposes of removing and taking possession of the Engines;

(b) The Court enter a Declaratory Judgment that MAA does not have a lien against the Engines that is superior to the ownership interest of Ameristar.

(c) Ameristar recover damages from MMA for loss of use of the Engines;

(d) Ameristar recover punitive damages from MMA;

(e) Ameristar recover attorney's fees, costs, and expenses from MMA;

(f) Ameristar recover pre- and post-judgment interest from MMA at the highest permissible rate, at law or in equity;

(g) The Court award all other relief, at law or in equity to which Ameristar may show itself to be justly entitled.

Alternately, Ameristar respectfully requests:

(h) Ameristar recover actual damages from Valencia; and

(i) Ameristar recover punitive damages from Valencia;

(j) Ameristar recover its attorney's fees, costs, and expenses from Valencia;

(k) Ameristar recover pre- and post-judgment interest from Valencia at the highest permissible rate, at law or in equity;

(l) The Court award all other relief at law or in equity to which Plaintiff may show itself justly entitled.

Dated: March 21, 2024.   Respectfully Submitted,

**HUSCH BLACKWELL LLP**

By: */s/ Buffey E. Klein*
Buffey E. Klein
Florida Bar No. 0034639
1900 N. Pearl, Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 (fax)
buffey.klein@huschblackwell.com
***Attorney for Plaintiff***